BOYER, Judge.
The point to be resolved by this appeal is:
“Does the 20% limitation contained in Section 145.121(2) (b), Florida Statutes, apply when a county officer compensated under Chapter 145, Florida Statutes, becomes entitled to an increase in salary due to a change in population bracket resulting from a population increase under the Federal Decennial Census?
Prior to 1969 the salaries of county officials were fixed primarily by local laws. They varied from county to county and from year to year. By Chapter 69-346, Laws of Florida 1969, many changes were wrought. That act was carried forward into Chapter 145, Florida Statutes. A key to the legislative intent may be found in F.S. 145.011, which provides as follows:
“Legislative intent
(1) In compliance with § 5(c), Art. II of the state constitution, it is the intent of the legislature to provide for the annual compensation and method of payment for the several county officers named herein.
“(2) The legislature has determined that a uniform and not arbitrary and discriminatory salary law is needed to replace the haphazard, preferential, inequitable, and probably unconstitutional local law method of paying elected county officers.
“(3) It is further the intent of this legislature to provide by general law for such uniform compensation of county officials having substantially equal duties and responsibilities, taking into account the multitude of changes that have affected these offices within the past decade.
“(4) The salary schedules in this chapter are therefore based on a classification of counties according to each coun *569 ty’s population, which the legislature determines to be the most practical basis from which to arrive at an adequate, uniform salary system.”
It is apparent from Subsection (4), above quoted, that the legislature determined that the most practical basis for fixing salary schedules was the population of the county involved.
Florida Statute 145.021 defines “population” to mean “the population according to the latest official decennial census.”
Florida Statute 145.15 provided that the pertinent provisions of the act should take effect July 1, 1969 and further that “any change in salary caused by application of the 1970 census shall become effective on July 1, 1971, pursuant to § 11.031(3).” It is obvious therefore that the legislature had the imminentcy of the 1970 federal census in mind when the act was adopted.
Florida Statute 145.031 contains a salary schedule for members of the board of county commissioners of the several counties based upon the population of the county.
Prior to the 1970 official decennial census Clay County had a population of less than 30,000. Prior to the effective date of the above mentioned act the Board of County Commissioners of Clay County received an annual salary of $3,628.80.
On the effective date of the 1970 Federal Decennial Census, viz; July 1, 1971 (F. S. 11.031(3)) Clay County moved into the next higher bracket (F.S. 145.031(4)) having a population in excess of 30,000.
The Board of County Commissioners thereupon requested the Clerk of the Circuit Court of Clay County to commence paying them an annual salary of $6,000 as provided in the schedule set forth in Florida Statute 145.031(4). The Clerk refused, relying upon Florida Statute 145.121(2) (b), the pertinent portion of which is as follows:
“Those [county officials] * * * whose total compensation for the immediately preceding year under which the office operates * * * was less than the salary payable under this chapter shall have their salary increased each year at the rate of twenty percent of their total annual compensation until their salary reaches the amount provided in this chapter. * * * .”
The County Commissioners thereupon filed a complaint for declaratory decree, essentially presenting the point set forth in the first paragraph above. Following final hearing the Circuit Court in and for Clay County answered the question in the affirmative, relying primarily upon an opinion rendered by the Attorney General of the State.of Florida (A.G.O. 072 209). This appeal followed.
We reverse.
As above observed it is apparent that the legislature was cognizant of the then imminent 1970 census and that it would reveal substantial changes in the populations of many counties. It specifically provided that any change in salary caused by application of that census should become effective July 1, 1971. (F.S. 145.15) It is equally clear that the legislature determined that the most practical basis for arriving at adequate, uniform and equitable salary classifications was “according to each county’s population”. (F.S. 145.011) Therefore, on July 1, 1971, the effective date of the application of the 1970 census, the county commissioners of the several counties were entitled to commence being paid the compensation as provided by Florida Statute 145.031 based upon the population of his county as determined by the 1970 census.
We find that it was the intent of the legislature, as reflected by Florida Statute 145.011, that the twenty percent limitation contained in F.S. 145.121 (2) (b) be applicable to the compensation of county officials (except those specifically excepted therefrom) whose compensation prior to the ef *570 fective date of the act was less than the compensation payable under the schedules set forth in the act, without regard to any change caused by application of the 1970 census. Indeed, as above observed, the introductory clause of F.S. 145.121(2) specifically recites that the adjustments therein provided for shall be made “on July 1, 1969", whereas F.S. 145.15 provides that changes in salary caused by application of the 1970 census shall become effective on July 1,1971.
Accordingly, we answer the question set forth in the commencing paragraph hereof in the negative.
It is so ordered.
SPECTOR, Acting C. J., and JOHNSON, J., concur.